W. B. GEARY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7364. Promulgated April 29, 1927.

Taxable gain from the sale of property determined.

*H. V. Campbell, Esq.,* and *Arthur S. Dayton, Esq.,* for the petitioner.
*F. O. Graves, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in income tax for 1921 in the amount of $12,067.18. The deficiency arises from the action of the Commissioner in adding to the income of the petitioner an amount computed to be the market value of deferred purchase-price obligations on the sale of real estate made during that year.

FINDINGS OF FACT.

On January 3, 1921, the petitioner sold and conveyed to the F. W. Woolworth Corporation, by a warranty deed, certain properties situated on Capitol Street in Charleston, W. Va. The consideration was $146,800, of which $46,800 was paid in cash and the balance, amounting to $100,000, the vendee agreed to pay to the petitioner, or his order, in seventeen equal annual installments of $5,882.35 each, with interest at the rate of 6 per cent per annum, payable annually. The deferred purchase price was secured by a vendor's lien. No notes or evidence of indebtedness were given other than the agreement to make the payments as aforesaid.

The above decribed property consisted of a lot having a frontage of 45 feet, 10½ inches on Capitol Street, on which was located a

three-story brick building and was part of the property acquired by the petitioner by deed from W. D. Payne, special commissioner, on July 17, 1917. The property acquired by the petitioner from the special commissioner consisted of 170 feet frontage on Capitol Street, on which was located a building covering the whole property. The building contained seven store rooms. The consideration paid for this property was $340,000, of which $50,000 was paid in cash and the balance thereof was to be paid in twenty equal annual installments from the date of the delivery of the deed to petitioner. A vendor's lien was reserved to the special commissioner to secure the payment of the deferred purchase money in the amount of $290,000. On January 3, 1921, the date of the sale by the petitioner to the Woolworth Company, there was due to the special commissioner by the petitioner the sum of $220,330.33.

The Woolworth Company would not pay to the petitioner the full purchase price and accept a deed conveying the property encumbered by vendor's lien for the unpaid purchase price which the petitioner was obligated to pay and did not execute notes representing the deferred purchase money.

Contemporaneously with the execution of the deed conveying said property to the Woolworth Company, Geary executed an assignment of the agreement of the Woolworth Company to make said seventeen equal annual payments, and also transferred the cash payment which he had received, to the special commissioner who gave the petitioner credit for the amount of cash delivered and agreed to give him credit for each installment as it was paid by the Woolworth Company. This assignment authorized the special commissioner to receive from the Woolworth Company the deferred payments as and when paid and to apply such payments as credit upon the unpaid purchase price agreed to be paid by the petitioner.

The deed executed by the petitioner to the Woolworth Company contained no acceleration clause whereby the entire debt thereby secured would become due and payable upon default in the payment of any installment of principal or interest. The obligation of the Woolworth Company was secured by a vendor's lien contained in the deed of conveyance, which obligation was assigned by the petitioner to the special commissioner as aforesaid.

By a decree entered on July 11, 1917, the special commissioner was authorized to release one foot of the above property from the vendor's lien reserved by him in the deed to the petitioner for each $2,000 paid to the said special commissioner and by an instrument dated January 4, 1921, which recited "And Whereas, the said W. B. Geary has paid to the said special commissioner $2,000 for each front foot of said property hereinafter described," the special commissioner released a portion of the said property described as follows:

Beginning at a point on the northeast side of Capitol Street at the common corner between the property hereinafter described and that of the Charleston National Bank; thence running with Capitol Street and a line of said property 48 feet; thence northwest parallel with the line of the Charleston National Bank property toward Summers Street 138 feet and 5/10 more or less to the back line of said property; thence with the back line of the said property to the property line of the Charleston National Bank, and with the same to the place of beginning.

The Woolworth Company for a time made payments according to the agreement and in 1924 or 1925 made a payment of $50,000, and on January 2 or 3, 1926, that company made the final payment of all of its obligations to the petitioner. The Woolworth Company had the right under its agreement with the petitioner to pay the entire purchase price in January or July of any year prior to the maturity date of the full amount of the purchase price.

### OPINION.

TRAMMELL: It was contended by the petitioner, first, that the sale to the Woolworth Company was not a closed or completed transaction and that no taxable profit should be computed thereon until the cost price of the property was received; second, that the undertaking of the Woolworth Company did not have a readily realizable market value; and, third, that, if it had a readily realizable market value, it would have been so low as to justify no additional tax.

The petitioner relies upon the following provisions of the Revenue Act of 1921:

SEC. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property * * *.

    *        *        *        *        *        *        *

(c) For the purposes of this title, on an exchange of property, real, personal, or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value * * *.

(d) (1) Where property is exchanged for other property and no gain or less is recognized under the provisions of subdivision (c), the property received shall, for the purposes of this section, be treated as taking the place of the property exchanged therefor, except as provided in subdivision (e) * * *.

(e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess * * *.

(f) Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxa-

tion of that portion of any installment payment representing gain or profit in the year in which such payment is received.

The provision of the statute that where property is exchanged for other property no gain or loss is recognized unless the property received in exchange has a readily realizable market value, is applicable only to exchanges of property and not to sales. Where property is sold for a cash payment and certain deferred payments evidenced by notes or otherwise, the transaction is not considered an exchange of property but is a sale of property. See *Five Per Cent. Cases*, 110 U. S. 471; *Washington* v. *Ogden*, 1 Black 450; *Williamson* v. *Berry*, 8 How. 495. The statutory provision relating to exchanges is not, in our opinion, applicable to this case where property is sold on such a basis that the notes or obligations to make deferred payments are the equivalent of cash or have a market value and the transaction results in taxable gain based on the difference between the cost of the property (it having been acquired subsequent to March 1, 1913,) and the amount of cash received added to the market value of the securities or purchase-price obligations. There was some testimony introduced to the effect that the obligations of the Woolworth Company to make the deferred payments were, under the circumstances, not worth more than 50 per cent of the face amount thereof. We are not convinced, however, from this testimony that these obligations were worth anything less than their face value. They bore 6 per cent interest and could have been paid in full under the agreement during January or July prior to the maturity date and they were, in fact, paid in full with interest in 1926.

*Judgment will be entered on 15 days' notice, under Rule 50.*